IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AURELIO C., § § Plaintiff, § § v. § § COMMISSIONER, SOCIAL § SECURITY ADMINISTRATION, § § Defendant. § | Case No. 3:23-cv-01765-X-BT |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Aurelio C.'s[1] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. For the reasons explained below, the District Judge should **REVERSE** the Commissioner's decision and **REMAND** the case for further administrative proceedings consistent with this recommendation.

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

## Background

Plaintiff filed for supplemental security income (SSI) on October 21, 2019, alleging a disability onset date of June 15, 2018. Tr. 18. After his application for SSI was denied initially and on reconsideration, an Administrative Law Judge (ALJ) held an administrative hearing on June 8, 2021.[2] *Id.* On January 14, 2022, the ALJ issued a decision finding that Plaintiff had not been under a disability within the meaning of the Social Security Act from October 21, 2019, through the date of the decision. Tr. 26. Thus, the ALJ found Plaintiff was not entitled to SSI. Tr. 26.

In his written decision utilizing the five-step sequential evaluation,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity

---

[2] Due to extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic, all participants attended the hearing by telephone. Tr. 18.

[3] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558,

since the date Plaintiff filed the SSI application. Tr. 20. The ALJ also found that Plaintiff suffered from type 2 diabetes mellitus with neuropathy, bilateral knee osteoarthritis, and obesity, but he did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. Tr. 20-21. The ALJ then determined that Plaintiff had the Residual Functional Capacity (RFC) to perform a full range of work at all exertional levels, but with some nonexertional limitations. Tr. 22. Specifically, "[a]fter careful consideration of the entire record," the ALJ found:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations. The claimant must be allowed to stand up to 5 minutes after every 30 minutes of sitting, and to sit down up to 5 minutes after every 30 minutes of standing, while remaining on task. The claimant can frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities. The claimant can [occasionally] push or pull or operate foot controls with both lower extremities. The claimant can [occasionally] kneel, crouch, stoop, balance, and crawl, and can [occasionally] climb stairs and ramps. The claimant can never climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. In addition, the claimant is able to understand, carry-out, and remember simple instructions, and make simple work related decisions.

Tr. 22.

---

564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

To determine Plaintiff's RFC, the ALJ considered, among other evidence in the record, the medical opinion of Michael Taba, M.D. Tr. 24. Dr. Taba conducted a consultative examination of Plaintiff after the administrative hearing, on November 10, 2021. Tr. 541. In his assessment of Plaintiff, Dr. Taba opined that Plaintiff "suffers from bilateral severe osteoarthritis of the knees" and as a result is "unable to stand, walk, or be on his feet for long period of times, 1-2 hours in an 8 hour day. He can only do sedentary type work, based on the current condition of his knees." Tr. 549. The ALJ found Dr. Taba's opinion unpersuasive due to lack of consistency with other evidence in the record. Tr. 24.

Finally, relying on the testimony of a vocational expert, the ALJ determined that Plaintiff was unable to perform his past relevant work, but that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including as a meat clerk, a hand launderer, and a stubber.[4] Tr. 24-26.

---

[4] According to the Dictionary of Occupational Titles, the job of "stubber" belongs in a group of occupations concerned with "receiving, storing, shipping, distributing, and issuing supplies, equipment, and merchandise within a stockroom, toolcrib, receiving room, shipping room, freight yard, or warehouse environment." D.O.T. Code 222. Specifically, within the retail trade, a stubber is one who "[r]emoves sales-slip stubs from packages at loading dock and sorts stubs, according to size of package or type of merchandise, to keep record of store deliveries[;] [r]eturns illegibly addressed or mutilated packages for rewrapping or readdressing[;] and

Plaintiff appealed the ALJ's decision to the Appeals Council, but the Appeals Counsel denied review. *See* Tr. 1. Plaintiff then filed this action in federal district court. *See* Compl. (ECF No. 1). Plaintiff challenges the ALJ's decision on two grounds. First, he argues the ALJ erred in the evaluation of the RFC based on an improper analysis of the medical opinions of record. Pl.'s Br. 8-14. Second, Plaintiff argues the ALJ erred by relying upon vocational testimony that was inconsistent with the Dictionary of Occupational Titles without justification. *Id.* at 14-18.

## Legal Standards

Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and whether the proper legal standards were utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does "not reweigh the evidence, try the issues *de novo,* or substitute" its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38

---

[t]otals number of stubs at end of day and prepares report." D.O.T. Code 222.687-034.

F.3d at 236. An "ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ." *Corpany v. Colvin*, 2014 WL 1255316, at *9 (N.D. Tex. Mar. 26, 2014) (citing *Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009)).

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (per curiam)); *see also Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in her articulation compromises no aspect of fairness or accuracy that her process is designed to ensure."). "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have

reached a different conclusion absent the procedural error." *Id.* (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam)).

## Analysis

1. *The ALJ erred in his analysis of Dr. Taba's medical opinion.*

Plaintiff's first ground for error—that the ALJ erred in the evaluation of the RFC based on an improper analysis of the medical opinions of record—requires remand. Specifically, the ALJ did not adequately explain how he considered the supportability factor in evaluating the persuasiveness of Dr. Taba's medical opinion.

Since Plaintiff applied for SSI on October 21, 2019, the revised regulations adopted in March of 2017 apply. *See* 20 C.F.R. § 404.1520c ("For claims filed . . . on or after March 27, 2017, the rules in this section apply."). According to the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "Instead, ALJs must 'articulate in [their] determination or decision how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record.'" *Diamond N. J. v. Kijakazi*, 2022 WL 4589099, at *3 (N.D. Tex. Sept. 29, 2022) (Horan, J.) (citing 20 C.F.R. § 404.1520c(b)).

7

The revised regulations mandate that ALJs evaluate the persuasiveness of medical opinions by applying five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *See* 20 C.F.R. § 404.1520c(c). The factors of supportability and consistency are the most important factors ALJs consider; thus, when evaluating a medical opinion, the ALJ is required to explain how he or she considered the supportability and consistency factors, "but an explanation for the remaining factors is not required unless the ALJ is deciding among multiple medical opinions of equal support and consistency on the same issue that differ slightly." *Diamond*, 2022 WL 4589099, at *3 (citing 20 C.F.R. § 404.1520c(b)(2)).

In this case, the ALJ briefly recited the following regarding his consideration of Dr. Taba's medical opinion:

> After the hearing, the claimant presented to Michael Taba, M.D. for consultative examination (Ex. B9F). On examination, the claimant had swelling in the lower extremities, which reduced his range of motion (Ex. B9F/9). Dr. Taba assessed the claimant with bilateral knee osteoarthritis (Ex. B9F/9). As a result, Dr. Taba opined that the claimant is unable to stand, walk, or be on his feet for long periods of time, specifically one to two hours in an eight-hour workday (Ex. B9F/9). Dr. Taba went on to opine that the claimant can only do sedentary type work based on the conditions of his knees (Ex. B9F/9). The undersigned does not find this opinion persuasive. First, the opinion is not consistent with other evidence of record. Although the claimant reported pain during past examinations, these significant findings were not present (Ex. B4F). The claimant also reported some

8

> problems with walking due to neuropathy and not necessarily his knee problems as indicated by Dr. Taba.

Tr. 24. The ALJ's discussion of Dr. Taba's medical opinion only addresses the consistency factor, not the supportability factor. However, the supportability and consistency factors "involve different analyses and require the ALJ to explain her reasoning for her persuasiveness finding with respect to each factor." *Heleodoro C. v. Comm'r*, 2022 WL 4359148, at *3 (N.D. Tex. July 20, 2022), *adopted sub nom. by Castro v. Comm'r*, 2022 WL 4360555 (N.D. Tex. Sept. 19, 2022). The consistency factor is an "all-encompassing inquiry" which focuses on "how well a medical source is supported, or not supported, *by the entire record.*" *Id.* (emphasis in original). On the other hand, supportability "measures the degree of relatedness between a medical provider's opinion and the medical evidence *she provides to support* that opinion[.]" *Id.* (emphasis in original).

Dr. Taba opined that Plaintiff "suffers from bilateral severe osteoarthritis of the knees" and as a result is "unable to stand, walk, or be on his feet for long period of times, 1-2 hours in an 8 hour day. He can only do sedentary type work, based on the current condition of his knees." Tr. 549. Dr. Taba also provided a Medical Source Statement that Plaintiff could: occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; sit 8 hours total and for 6 hours at a time; stand 2 hours total and for 1 hour at a time; walk for 2 hours total and 1 hour at a time; occasionally push/pull with

9

the upper extremities, operate foot controls, and climb ramps/stairs; and never climb ladders/scaffolds, balance, stoop, kneel, crouch, or crawl. Tr. 542-545. Dr. Taba further advised that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces or climb a few steps at a reasonable pace with the use of a single handrail. Tr. 547.

Dr. Taba based his opinion on an examination of Plaintiff that was significant for swelling, tenderness and deformity in both knees. Dr. Taba also found Plaintiff had a limited range of motion, crepitus, and pain at extreme limits of range in both knees. Tr. 548-549. Bilateral knee x-rays further revealed "severe grade 4 arthritic changes, bone on bone, with varus deformities." Tr. 549. But the ALJ did not discuss the medical evidence Dr. Taba relied on to support his opinion. Indeed, the Commissioner tacitly concedes as much. And while the Court may be able to intuit the ALJ's position on supportability based on his ultimate conclusion, "[r]eviewing courts cannot make educated guesses as to an ALJ's inner thoughts." *Guy v. Comm'r of Soc. Sec.*, at *5 (N.D. Tex. Mar. 14, 2022), *adopted by* 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022).

Accordingly, the ALJ erred by not articulating the supportability of Dr. Taba's medical opinion.

### 2. *The ALJ's error was not harmless.*

In the Fifth Circuit, harmless error "exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. Nov. 28, 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). Denial of a mandatory procedural protection is not harmless error. *Heleodoro C.*, 2022 WL 4359148, at *4 (citing *William T. v. Comm'r of Soc. Sec.*, 2020 WL 6946517, at *6 (N.D. Tex. Nov. 25, 2020)).

Here, the ALJ's error in disregarding Dr. Taba's medical opinion without analyzing the supportability factor required by 20 C.F.R. § 404.1520c was not harmless. Such an error makes it impossible for the Court to discern whether the ALJ properly considered and weighed a medical opinion, which directly affects the RFC determination—therefore, it is not inconceivable that proper consideration of Dr. Taba's opinion could have led the ALJ to a different conclusion. *See William T.*, 2020 WL 6946517, at *7 (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 762 (5th Cir. 2017)); *see also Guy*, 2022 WL 1008039, at *6 ("§ 404.1520c exists partly to ensure substantial evidence supports the ALJ's decision. Unless a reviewing court understands why an ALJ discredited a treating physician's opinion, the court can never know with certainty whether substantial evidence supports the ALJ's conclusion."). As Plaintiff contends, Dr. Taba opined that Plaintiff

11

cannot sustain the significant periods of standing/walking with additional lifting and postural limitations found by the ALJ to be consistent with a sedentary or light RFC. *See* Tr. 542-543, 549. If the ALJ properly considered Dr. Taba's opinions and found them persuasive, Plaintiff's limitations would have precluded him from performing his past employment and may have directed a finding of disability under Medical-Vocational Guidelines.

Because the Court cannot meaningfully review this matter without a proper evaluation of Dr. Taba's medical opinion, the District Judge should reverse the decision and remand this action.[5]

## Recommendation

For the reasons explained above, the District Judge should REVERSE the decision of the Commissioner and REMAND the case for further administrative proceedings consistent with this recommendation.

**SO RECOMMENDED.**

August 1, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

---

[5] Because Plaintiff's first ground of error compels remand, the Court pretermits consideration of Plaintiff's other arguments.

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).